Case 16-6486. Faisal Ahmed v. Mardia Ahmed. Argument not to exceed 15 minutes per side. Mr. Weinmiller, you may proceed for the appellant. Morning. Good morning. Chief Judge Cole, Judge Gibbons, Judge Rogers, may it please the Court. I am John Weinmiller of Knoxville, Tennessee, and I am a member of the Tennessee Bar. The issue in this case involves the Hague Convention. Judge Rogers. Would you like to reserve any time for rebuttal? Thank you, Your Honor. Yes, two minutes, if I may. Sure. As Judge Rogers explained in Pliego several years ago, the Hague Convention was implemented by statute and requires the return of abducted children to the state, that is, nation, of habitual residents so that the courts of that state may resolve custody issues. The convention, however, did not define habitual residents, and that's been a topic of considerable debate in cases around the country. This circuit actually was the first to address the issue in the Friedrich case back in 1993, and it announced the general rule for this circuit, which is that to determine the habitual residents, the court must focus on the child, not the parents, and examine past experience, not future intentions. The Sixth Circuit modified that standard in the Robert case in 2007, announcing what some have called the acclimatization standard. A child's habitual residence is the nation where, at the time of their removal, the child has been present long enough to allow acclimatization, and where this presence has a degree of settled purpose from the child's perspective. Now, the acclimatization standard inquires into whether their children's lives have become firmly rooted in a particular country, such that it is their home. Indeed, the goal of the various tests for habitual residents used by the circuits is to determine where a child's home is at the time of removal or retention. In Friedrich, the Sixth Circuit noted that habitual residence pertains to the customary residence prior to removal, but habitual residence must not be confused with domicile. And significant to this case involving very young children, it is not predicated on the care or protection provided by either parent. The kinds of experiences required to acclimate to a new country were laid out again by counsel. We're generally familiar with the law. What's your contention today? The contention today is that in this case involving two very young children who were not able to acclimatize because of their age, we cannot apply the current general acclimatization standard laid out in Friedrich as modified in the Robert case. This court in Simcox, and then also in the Roberts case, acknowledged that in these cases involving very young or developmentally disabled children, there are not sufficient indicia of acclimatization to determine what the child's home is. And so what do we do in those cases? Other circuits... What do you say we should do? I'll tell you what I think you should do. Yes, sir. Evaluate it. Yes, I think in this case, given the Friedrich standard as modified in Robert, we need to focus on the child, of course, but in those cases when there is not sufficient indicia of acclimatization, and only in those cases you need to look at shared intent of the parent's last shared intent, as the other courts do. Your Honor, it's essentially the inverse of what this court said it will not do under the Ninth Circuit Moses decision. Didn't the district court in effect apply the last shared intent? No, Your Honor. Did it say that it could? Your Honors, respectfully, I do not think it did, because it found the last shared intent of the Ahmeds was to live in the United Kingdom. It found that there was no shared intent after approximately May of 2014. So it applied the shared intent test, at least in the alternative, but just erred, according to you, in determining when that obtained, or what point in time it referred to. Well, my reading of the district court's opinion is that it looked to the facts and circumstances and its discussion shows focused on the fact that the children, the two twins, had lived in the U.S. for six and a half months and in the U.K. for about two months prior to the wrong. There is a finding, though, isn't there, of the district court, that there was shared intent to live in the U.K. in August of 2013, and also that there was no shared intent by May of 2014. Absolutely. So we're just, if the relevant period is before 13, then in effect we have enough to rule one way, and if in fact the last shared intent is after, or the relevant time to look at is after May of 14, we would rule the other way, and in between we don't know. What's your position on what time, shared intent, the last shared intent, when? Can it be the last shared intent before they got married? Well, in this particular case, we know that there was shared intent at least in the fall, as you say, of 13. I just went through that with the XR. Right, right. And in this case, the pregnancy happened in early 2014 within that window where the judge said there had been shared intent and he wasn't certain when the shared intent ceased, when the mother no longer shared that intent. So during that pregnancy, at some point it ceased. You know, why would shared intent ever be a workable standard? You know, human relationships ebb and flow. Folks who are in marital and romantic relationships fall in and out of love. They fall in and out of peace. You know, I mean, stuff happens. If you're using that as a measure for children, it seems to me you've inherently created a standard that is not going to be in the best interest of the child. Two quick comments on that, Your Honor. First of all, courts have said that the best interest, this seems odd to say, but the best interests of the child are not part of the equation here. But more to the point. Well, whether it's a part of the equation or not, I mean, why would you have a test that disregards it? Fair point. But what I'm suggesting here is not that you only look at shared intent when there are not indicia of acclimatization. So we've already ruled it down to that moment. And in that moment, the shared intent stands in as a surrogate for the child's perspective, as it were. Again, turning back to the language that this Court used in Robert, you need to look at the situation from the child's perspective. A small child just doesn't have that ability. So it's a surrogate for that child's ability. There's no child yet when a shared intent occurred in this case. It's in utero, right? That is correct, Your Honor. So should we look at when it's in utero? And if we should look at when it's in utero, why not look at before it's in utero? And at some point it becomes kind of absurd. So wouldn't we have to draw a line at where you look at the last shared intent? That's what I'm asking. Yeah, exactly. Exactly, but what's your answer? The cases all say that it has to be a fact-intensive inquiry. And in this case, the Court's findings... You have a fact-intensive inquiry as to what their intent was years before the children were even conceived. Or you could have a factual inquiry as to when they're in utero, what the last shared intent was. Saying it's a factual inquiry doesn't answer the question about how far back we go to look at shared intent. You don't have an answer to that. I don't think you have to draw a bright line in this case because... We have to draw a pretty bright line because we only got a small period of ambiguity here. Yeah, and I would say in this case... Yes, Your Honor. Finally. Well, I... All right. So where do we get that? We just make that up? We have a court finding of shared intent. At the time of conception, but why should it be at the time of conception rather than at the time of birth? Well, there was no shared intent at the time of birth. So in that case... You get a different answer if it's at the time of birth. I'm sorry? You get a different answer then if it's, in this case, if it's at the time of birth than if you do if it's at the time of conception. So you must be arguing that it's at the time of conception or maybe a month or two into that. I don't know what you're arguing. I would say it is at least at the time of conception. Maybe even earlier. It could be earlier, Your Honor, yes. You don't have to argue that. All you have to argue is that it's at the time of conception. At the time of conception, exactly. Why should we reach that legal conclusion? Well, and that is because you have no indicia of acclimatization. You have an absence of other basis. I understand that that would warrant looking at the shared intent of the parents at some point in time, but that doesn't tell us at what point in time it should become relevant. As I say, you can go back until it becomes absurd, right? So why should we go back to conception? Why not just go back to birth? It seems like it would make more sense. Because there is no shared intent at the time of birth. With respect, I'm just not following. That helps you, but what if there was shared intent at the time of birth? We could say that that's what last shared intent relates to, any time after birth, but not all the way back to conception. It doesn't answer whether we should do that or not to say that it didn't occur in this case. That's just applying the test. That is true. What legal support do you have that when, if we do adopt last shared intent, it should go back to conception rather than just going back to birth? That's my question. The legal support I'm asking for. At least at that moment of time, when there is the plan to have a family, and not just the plan, but they've acted on it, there is a basis to tie that shared intent to the child. Again, going back to the focus on the child and the use of the shared intent. It has to be intent that relates to a particular person, a particular child. I think so, Your Honor. I think so. It's hard to say at conception, though. People at conception, they don't even know they're pregnant sometimes. That's true. But in this case, we know that there was a clear finding of shared intent prior to that. The problem comes prior to what? To conception. It's not a shared intent that goes back five years or ten years. We don't have that scenario. That would be sort of an absurd looking back into the future. We're talking about a shared intent that is proximate to the pregnancy. I want to make sure I'm clear on how you are presenting this. You say that there was shared intent, I guess, through the end of 2013, and that by February of 2014 or so there was no shared intent by the time she became pregnant? No, not quite. The district court found in fall of 2013, and by May of 2014 when the mother moved to the U.S., there was no longer shared intent. So what's your position on whether there was shared intent, let's say, as of the date of when she became pregnant? Or does that make a difference? It's sort of the same question as Judge Rogers. It is the same question, and I think it is relevant, and I think the court's findings support that finding. I thought your position was that there was no shared intent as of, let's say, February of 2014. No, I said there was no shared intent at the time of the birth. Okay, so shared intent, the district court found that it had evaporated or was gone as of May of 2014. Correct. So my question really is, is it your position that we need more fact-finding by the district court in terms of when the last shared intent was, and that would sort of require the district court to focus on, I don't know, early 2014 to May of 2014. And I would note that the district court said it is unclear whether there was shared intent in that period. Right. Yeah, you may answer the question. I think this goes back to what Judge Rogers was pressing me on, and I think that the shared intent finding of the district court of fall of 2013 would be sufficient in this case. The pregnancy happened as your... So before the pregnancy. It was shortly before the pregnancy. She became pregnant around February of 2014, so fall, that could be four, five, six months before. Yeah. Okay. So we don't need any further determination by the district court in terms of last parental shared intent for the early part of 2014 is what you're telling me. Respectfully, Your Honor, I think that is correct. I think that you can, if you decide to... The early part of... Oh, go ahead. The early part of February of 2014, the district court says the intent is unclear. Right. You would say that there was last shared intent during that period, that there was a shared intent prior to that. My memory... In January of 2014. Right. I thought it was late 2013. It's clear the finding was late 2013 because... But you were taking the position that was... I'm sorry to interrupt. Yes, I'm trying to get at what your position... What's your factual position? Your factual position can only be, on this court, applying clearly erroneous review, that there was a shared intent prior to pregnancy, right? Correct, Your Honor. In fall of 2013... In order to avoid a remand for a factual determination, you've got to argue that shared intent can attach for relevant Hague purposes prior to conception. But you're not arguing that. You're arguing that at conception or maybe after conception it attaches. I'm trying to get at what your position is with respect to when it attaches. And you say you agree it doesn't go back forever. It doesn't go back forever. How far back does it go? A logical thing, I'm suggesting, but I don't have any basis for it, would be birth, in which case you would just lose, right, if we apply clearly erroneous review to the facts of this case. In that case, you would not look at shared intent at all, and that would not help your decision one way or the other, and there wouldn't be a basis other than challenging... All right, all right. Your time is up. I'm trying to get to the point. When, according to you, does the last shared intent attach? Does it attach prior to conception? Does it attach in the early part of pregnancy? Does it attach at birth? It has big differences for how we rule on this case. It does. Which do you suggest that we accept? Under the findings of the district court. I'm asking for a legal standard, and you keep going back to the facts. What standard should we apply in looking to the last shared intent? Any standard? Well, it has to be proximate to the conception, Your Honor. It can't go back indefinitely, and what that... You were saying conception, then. Yeah, and that the conception... If it's at conception, if, according to you, there's a shared intent at the time of conception, then that's the operative shared intent. Yes, Your Honor. And my question is, at last, what support do you have for that? And you say, well, the facts of this case, that's not helping me. I want legal support for the fact that the legal standard is last shared intent at the time of conception. There's no support for that that you're giving me. Some of the cases we've cited in the brief involve cases in which the courts have had to go back to the shared intent prior to birth because the mother left and gave birth and changed her intent at some point. Who are those? I believe the Uzo case from the Northern District. That's a district court case somewhere. I'm sorry? That's a district court case somewhere. Yes, Your Honor, from Northern District of Illinois, I believe. Well, we're familiar with that, but that's it then, right? In other words, is there some policy which supports the argument or something in the egg convention? Yeah, I think. Something in the purposes of the convention or anything that tells us we should go back that far? Well, I think there are a number of cases that we have cited that support the proposition that looking at shared intent, as I said earlier, is a surrogate. And when you say shared intent, we're beating the horse as long as it's dead, I guess. But shared intent is for where the couple intends to live, but I thought it was for where they intend to live with the child. And there's no beginning of a child until February of 2014. So it would be a shared intent of where their family home is going to be. Irrespective of whether there's going to be a pregnancy. Right. All right. Thank you. Thank you. Morning. Good morning. May it please the Court. Chief Justice Cole, Judge Rogers, and Judge Gibbons, I believe that the district court correctly determined that the facts and the circumstances that were applied clearly showed that there was no shared intention to live in the United Kingdom as father maintained. And I think that the Roberts case and the Pandelaris case clearly show that you can't use technical rules here. You have to look closely at the facts and the circumstances and look at the child's past experience. When we look at the parental intent, we have to also look at, according to McKee and citing the Gitter case, that you have to look at the objective factual circumstances. And when you do that in this particular case, you see that it was not an error of law for the court to have ruled the way that it did. It is interesting to note, even in the appellant's brief, that what they are basing their belief on is Mr. Ahmad's expectations. And when I read the brief starting on page 20, over and over they said Mr. Ahmad expected that she would stay for a month and return to give birth in the U.K. He expected all these things to occur, which did not occur. That has no shared intent anyway that you look at it. The district court said there was no shared intent at that time. That's correct. We give clearly erroneous deference to that. Yes. We can just assume. For my purposes, I can't speak for my colleagues. We can assume that. I'm sorry. You seem to be arguing something that nobody's disputing. Okay. I'll move on from that, Your Honor, because I think that when you look at the differences in has to do with the possible shared intent during the pregnancy. You're talking about stuff that happened after the pregnancy, right? Right. I don't believe that you can look at this from the time standpoint of someone's pregnancy. Tell us why. I'm sorry? Please tell us why. Because you don't have a child who is acclimated. You don't have the facts and circumstances that show clearly that there was some intention for the child to live in a certain place. Why not? Because during pregnancy, any number of things could happen. You could theoretically have a case where there was a lot more in the record about where they intended to live. Although acclimatization seems really ludicrous for an infant as a standard, shared intent does too to me because human nature is just what it is. It is. And I mentioned that I think when the case first began, when I indicated to the court, I don't know of anyone who decides to get married who doesn't think that they're going to be together forever or make plans to be together. Things change. People's attitudes change. And in this particular case, when you look at Mrs. Ahmed leaving London in the spring of 2014, there was marital discord. She went to the United States. It's only Mr. Ahmed who thinks it's different at that point. And when you look at- You're talking about after the child is born and the district court said there was no shared intent at that point. Right. And- Again, for my purposes, you're arguing what's not really at issue. Yeah. I believe that there was never any shared intent in this case while the children were alive, other than when they were happily married, perhaps. But once the- The district court found. It's a factual matter, right? Right. And I looked at the- You're saying it doesn't matter, and you're saying it's true, it's true, it's true, and he's saying it doesn't matter. You seem to be arguing past each other. I think- Can you address what he's arguing? I'm sorry? Can you address what he's arguing? I think it's- I don't know where you get that because there are no cases that- And it's unclear up to February of 2014. And so he's either arguing that the fact that it was clear before August of 2013 is enough to say that that's the habitual residence, or we need further factual findings with respect to the interim period, whereas you're addressing your argument to the subsequent period, which is not really- So if you go back and you look at the distinction between what happened when Mrs. Ahmed decided to move to England in 2011, stayed there until 13. She took everything with her. She took her diplomas. She took all of her important personal items, the jewelry, et cetera. And so she did that because in that time, before the children were ever conceived, she was hoping to live in England. However, when she left in the spring of 2014, she took all those things back with her, and never again did she take them in 15 when she went to visit or any other subsequent time. So I think when you look at that and you look at the things that- Even when they went in 2015, she didn't cancel the medical insurance. She continued her professional license. She didn't stop her WIC. She didn't suspend her phone. She paid her privilege taxes. So she clearly was- You're talking about what period you're talking about right now? In 2015. Okay. If you want to talk about 2015, where the district court has said there was no shared intent- Right. I can't speak for my colleagues, but they're not even challenging that. Right. Okay. We're concerned about either the period prior to August of 2013 or the period from August of 2013 to May of 2014. Right. In the first of those periods, the district court said there was a shared intent. Now, you can say that's clearly erroneous. I thought that's what you were- Are you saying that's clearly erroneous? No. No, you're right. All right. So there is shared intent up to 2013. Then from 2013 to May of 2014, we don't have any holding by the district court as to whether there was shared intent. That's correct. Right? So if that's the relevant period, we would send it back to have them make a finding, right? Or do you want to argue about it today and try to get us to make that factual finding? Well, I don't believe that additional factual record is needed. I believe that the court looked at the time that it felt was relevant, looked at what it believed had changed for the parties, and I don't believe that there's any support for saying in utero you can make a decision about habitual residence. Can you talk a little bit about the legal basis for applying a shared intent standard? I think it's very difficult for young, specifically young children. And when I read the district court's opinion, I agreed that it's very difficult to do that. It's not strictly- Well, are you talking really about the case law that would support that? When you look at, I think it was the Matthews, I'm sorry, the Maxwell case that we cited, as well as the McKee and the Robert case. I think when you look at those, it's very clear that this is exceedingly fact-dependent. Well, I don't question that. I just mean what do you have to say about the authorities to which your adversary looks to say that's the appropriate standard? I don't think any of the cases that he cited in any way suggest that a pre-birth determination controls. Certainly, when he looked at the one case he cited where a mom went to a different country just to have the baby and then to return, there was a clear shared intent before the child was born to do that, for her to just go to avoid the cost or the medical care. We don't have that case here. This is a case where a mom picked up and left because she was unhappy in the relationship. It wasn't working. If I take your point, you're saying if shared intent is ever the standard, it's only after the child is born. Yes, except when there's a clear agreement beforehand that, for example, she goes and stays in a hotel just to have the baby and then goes back so that the child had that citizenship. But in this case, mom returned to her home with her parents where the children lived and then went to visit. Okay, you keep wanting to get into 2015. I'm not sure how even someone who was strongly in favor of the shared intent standard would say that there was shared intent when the district court found that there wasn't. I believe that you can't say that the child has a habitual residence before they're born. I think that that's a very difficult thing to come by and to say that, well, we're always going to do this or this is what we've decided and it does not change. For any of us in life, circumstances change, your desires change, your relationships change. Let me ask you this. I mean, the district court spent a great deal of time talking about shared intent, last shared intent, but then said I really can't apply it because the Sixth Circuit has precedent that says I have to apply the acclimatization standard. I don't know if I'm characterizing that correctly. And then the district court essentially, after having all this discussion about shared intent, really applied this standard of acclimatization and essentially said, well, you had seven to eight weeks in the United Kingdom and six or seven months in the United States. And that seemed to me, in essence, said, well, because you had four more months in the United States than you did in the United Kingdom, that's what carries the day. Is that a fair statement? No. I believe that what the district court was looking at was the nature of that trip and the fact that it was a trip, it wasn't a desire to change, to move there. So the district court was looking at shared intent then? Well, I think it examined that first, but the case didn't turn on that. Okay. So it was looking at intent as well in the, you're saying, in this period after the twins were born. Right. And I looked at the page 14 of the opinion where the court signed the Pantelaris, which cited the Roberts case, and looked at, says, should not be, I'm sorry, habitual residence cannot be determined through the technical rules governing legal residence. Instead, courts look closely at the facts and circumstances of each case and consider the child's experiences in determining that. But it has to focus on what happened in the past, not what's going to happen in the future. So any future plans that the parents have are irrelevant to our inquiry. So I think the court then went to those particular cases and relied on those in saying, look, here are the facts and circumstances that I believe apply. Is there any way we can look at this acclimatization standard for, you know, very young children, developmentally disabled people? I mean, when you've got children who are under the age of one. Is there any way to apply that at all? I think it's very difficult at some level because you don't have the, they're not in school, they're not, you know, they have it attached in the community outside of the family at that point. They're very, they're much closer to the people that they're living with than the rest of the community itself. So while it's easy in some cases, and I think it was even shown, I think in the case that Judge Rogers had in the Newman case where we had Mexico and the children were in school, they were in the community, they were doing those things, the kinds of things that we don't have with a substantially younger set of children. But it's the duty falls on Mr. Ahmed in this case to prove acclimatization if that's the standard or to prove shared intent if that's the standard. Is that right? Yes. Yes. And we believe that the decision of the district court was not clearly erroneous in this case and that there was never the trip that he wanted to rely on subsequently because he believed that she was coming back from Bangladesh, et cetera, in 2015, just wasn't there. Do we have to apply one standard or the other? It seems that some of the other circuits will use both. They may give priority to the last shared intent standard when it's more helpful than the other standard. Right. And I think it does go to the facts and circumstances. You can't just say this is a red line rule here. We're going to do X, Y, and Z. It's not mechanical that way. And I believe that that's why the habitual residence was not defined in the convention itself. It was left to a point for the courts to make that determination, looking at all of the factors that it has in front of it before making the decision. We believe that it does not need to be returned to the district court for any further proceedings and that the court properly analyzed it under the law in the Sixth Circuit. And we ask that the court uphold the district court's opinion.  Thank you, Ms. Gardner. Appreciate your argument. Mr. Weinman. I'd like to return to Judge Rogers' question, if I may. I argued earlier that shared intent acts as a surrogate in cases when there is not an issue of acclimatization. Cases, including circuit cases around the country, talk about the proposition that there cannot be a change of habitual residence without a clear abandonment of a prior habitual residence. In the case where we're using shared intent as a surrogate for that, I would argue, Your Honor, that the court could use the same standard to apply to the shared intent. The shared intent of the parents controls until there is some clear intention to abandon that shared intent. That will, I think, get us around the problem of whether that shared intent that the district court found in fall of 2013 continued through the time of conception. We know from the district court's holding that it continued up to some time before she left for the United States. The district court didn't make that holding, though, did it? You think that is a matter of law? I'm sorry? The district court didn't hold that. The district court just didn't say anything about that. The district court said shared intent in October, and it had stopped at some point before she left. To what extent? It seems like our court has pretty specifically rejected the notion of shared intent, or at least the district court certainly thought so. Yeah, it's true. I think Friedrich and Robert make that clear. How in the world could we jump out and adopt a new standard, seeing that we're a panel of the court and not the court en bas? Is this something that could only be the result you want, one that could only be reached by the en bas court? I don't think so, and I'm going to go over a few seconds. The answer to that is no, Your Honor, because the Robert court and Simcox subsequently specifically recognized that there's a slice of cases that may not fit within the acclimatization standard laid out in Friedrich as modified by Robert. So I think that there's a gap to be filled. We also had that case law specifically rejecting the shared intent standard. Right, but the footnote for and Robert's acknowledges that this is the gray area. Robert's couldn't change that law either. Did we ever hold that the shared intent standard could not apply to a child under one year old? I don't recall that. So we're not bound. Thank you, Your Honor. Thank you for your time. Okay, counsel, thank you for your arguments this morning. We appreciate them. Take the case under submission, and you may adjourn court. Thank you.